UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAKE CHARLES DIVISION

| | |
|---|---|
| **PATS OF HENDERSON SEAFOOD & STEAKS INC** | **CASE NO. 2:21-CV-00470** |
| **VERSUS** | **JUDGE JAMES D. CAIN, JR.** |
| **WESCO INSURANCE CO** | **MAGISTRATE JUDGE KAY** |

### MEMORANDUM RULING

Before the Court is "Wesco Insurance Company's Motion for Summary Judgment Regarding Plaintiffs' Failure to Comply with Policy Conditions" (Doc. 52) wherein Wesco moves to dismiss any and all of Plaintiffs' claims for additional funds owed under the policy because Plaintiffs failed to fully comply with the conditions of the policy.

### FACTUAL STATEMENT

After being hit by three named storms, Hurricanes Laura and Delta, and Tropical Storm Beta, Plaintiff Pats of Henderson Seafood & Steaks, Inc. ("POH") submitted claims for property loss to its insurer, Wesco. The policy contains the following conditions, in pertinent part:

### BUILDING AND PERSONAL PROPERTY COVERAGE FORM

\*\*\*

#### E. Loss Conditions

The following conditions apply in addition to the Common Policy Conditions and the Commercial Property Conditions:

***

  **a.** You must see that the following are done in the event of loss or damage to Covered Property:

***

**(4)** Take all reasonable steps to protect the Covered Property from further damage and keep a record of your expenses necessary to protect the Covered Property, for consideration in the settlement of this claim.  This will not increase the Limit of Insurance. However, we will not pay for any subsequent loss or damage resulting from a cause of loss that is not a Covered Cause of Loss.  Also, if feasible, set the damaged property aside and in the best possible order for examination.

**(5)** At our request, give us complete inventories of the damaged and undamaged property. Include quantities, costs, values and amount of loss claimed.

**(6)** As often as may be reasonably required, permit us to inspect the property proving the loss or damage and examine your books and records.

Also, permit us to take samples of damaged and undamaged property for inspection, testing and analysis, and permit us to make copies from your books and records.

***

**(8)** Cooperate with us in the investigation or settlement of the claim.[1]

3. The Policy contains the following Legal Actions Against Us Condition:

## COMMERCIAL PROPERTY CONDITIONS

This Coverage part is subject to the following conditions, the Common Policy Conditions and applicable Loss Conditions and Additional Conditions in Commercial Property Coverage Forms.

---

[1] Defendant's exhibit A, attached to Declaration of James Tippett, Exhibit 1.

***

### D. LEGAL ACTION AGAINST US

No one may bring a legal action against us under this Coverage Part unless:
1. There has been full compliance with all the terms of this Coverage Part;
2. The action is brought within 2 years after the date on which the direct physical loss or damage occurred.[2]

Plaintiffs provided Wesco a list of alleged damaged contents on December 31, 2020.[3] On January 14, 2021, Counsel for Plaintiffs stated to Wesco: "Nevertheless, I told the adjuster that if they would make an advance of $500,000 they could come and reinspect the contents since they obviously made some sort of inspection previously, however inadequate it may be."[4]

On January 25, 2021, counsel for Plaintiffs stated in an email to Wesco that "if you would like to inspect the contents again, we will require a good faith advance of $750,000 to show you are willing to keep moving forward with this claim."[5] On February 5, 2021, counsel for Plaintiffs, through correspondence, demanded $750,000 before allowing an inspection.[6]

On February 23, 2021, Plaintiffs provided to Wesco a report from Ducote Air Heat & Electric dated September 18, 2020.[7] Plaintiffs did not notify Wesco that it was removing

---

[2] Id. at WESCO_000178.
[3] Defendants exhibit B attached to exhibit 1, ¶ 5.
[4] Defendant's exhibit 1 ¶ 6; Defendants exhibit C, attached to Defendant's exhibit 1.
[5] Id. ¶ 7.
[6] Id. ¶ 8.
[7] Defendants exhibit 1, ¶ 9; Defendants exhibit D, attached to exhibit 1.

the kitchen equipment from the building and putting it in either storage containers or in the open.[8] On July 1, 2021, Larry Henderson, an equipment consultant retained on behalf of Wesco tested the equipment and found it to be operational.[9]

On May 24, 2021, Plaintiffs provided Wesco the engineering report prepared by David Minton, P.E., dated October 23, 2020 in Plaintiffs' Initial Disclosures.[10] The Minton Report noted the following: "CEDG staff reviewed the framing systems within the exposed attic area and found that most areas appeared to have suffered minimal to no damage. It was noted that the truss construction appears to have received the storm related loading well and no cracking or displacement of members was specifically identified as a part of this effort."[11] On August 10, 2021, Plaintiffs provided notice that there was a potential problem with the truss system through a report by Charles Norman, P.E.[12]

On August 13, 2021, Kevin Vanderbrook, P.E. inspected the property and noted that the roof had been replaced and spray foam insulation was installed which prohibited inspections of connections between the roof trusses and the roof decking.[13] Plaintiffs provided no photographic evidence of damage to the roof trusses prior to the roof being repaired and/or the spray foam insulation being installed.[14]

---

[8] Defendants exhibit a, ¶ 10.
[9] Defendant's exhibit 6, Declaration of Larry Henderson ¶ ¶ 5 and 7; Defendant's exhibit A, attached to exhibit 6, pp. 2and 38.
[10] Id. ¶ 11; Defendant's exhibit 2.
[11] Defendant's exhibit 3, David Minton Report dated October 23, 2020.
[12] Defendants exhibit 1, ¶ 12.
[13] Defendant's exhibit 4, Kevin Vanderbrook, P.E. Declaration and Experts Report attached thereto as Exhibit A, p. 3.
[14] Defendant's exhibit 1, ¶ 13.

Mr. Vanderbrook's inspection on August 13, 2021, also noted that new framing had been installed in various locations and that the restaurant had been partially reconfigured, including new walls and new framing around the French doors.[15] Plaintiffs provided Wesco no notice as to the new framing or reconfiguration.[16]

Plaintiffs provided no photographic evidence of damage to the plumbing that would require it to be re-routed and/or replaced,[17] nor did Plaintiffs provide Wesco of any testing performed on the plumbing.[18]

On July 1, 2021, independent adjuster Josh Sursa took photographs which revealed that all electrical had been removed from the building and on August 13, 2021, Vanderbrook noted that new conduit and wiring was being pulled through the rear portion of the building.[19] Plaintiffs did not provide Wesco notice or photographs that it had an issue with the electrical system that would require complete replacement before it was done.[20]

Plaintiffs did not provide Wesco notice that there was damage to the brick fireplaces in the restaurant that would require that they be replaced, nor did Plaintiffs provide photographs of the damage.[21]

---

[15] Defendant's exhibit 4, Vanderbrook Declarations and Vanderbrook Report attached thereto as Exhibit A, p. 2.
[16] Defendant's exhibit 1, ¶ 14.
[17] Id. ¶ 18.
[18] Id. 19.
[19] Defendant's exhibit 1, ¶ 20; and exhibit F attached theretro.
[20] Id. ¶ 21.
[21] Id. ¶¶ 28 and 29.

## S̲ᴜᴍᴍᴀʀʏ J̲ᴜᴅɢᴍᴇɴᴛ S̲ᴛᴀɴᴅᴀʀᴅ

A court should grant a motion for summary judgment when the movant shows "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fᴇᴅ. R. Cɪᴠ. P. 56. The party moving for summary judgment is initially responsible for identifying portions of pleadings and discovery that show the lack of a genuine issue of material fact. *Tubacex, Inc. v. M/V Risan*, 45 F.3d 951, 954 (5th Cir. 1995). The court must deny the motion for summary judgment if the movant fails to meet this burden. *Id.*

If the movant makes this showing, however, the burden then shifts to the non-moving party to "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (quotations omitted). This requires more than mere allegations or denials of the adverse party's pleadings. Instead, the nonmovant must submit "significant probative evidence" in support of his claim. *State Farm Life Ins. Co. v. Gutterman*, 896 F.2d 116, 118 (5th Cir. 1990). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249 (citations omitted).

A court may not make credibility determinations or weigh the evidence in ruling on a motion for summary judgment. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000). The court is also required to view all evidence in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Clift v.*

*Clift*, 210 F.3d 268, 270 (5th Cir. 2000). Under this standard, a genuine issue of material fact exists if a reasonable trier of fact could render a verdict for the nonmoving party. *Brumfield v. Hollins*, 551 F.3d 322, 326 (5th Cir. 2008).

## LAW AND ANALYSIS

Wesco maintains that Plaintiffs failed to take reasonable steps to protect covered property from further damage. Wesco complains that Plaintiffs removed the kitchen equipment and stored same in a storage and outside without properly cleaning prior to storage causing further decay and/or deterioration to the equipment. Wesco also complains that Plaintiffs did not provide a report as to the equipment until February 23, 2021 even though the report was dated September 2020.

Wesco further complains that it was not allowed to inspect the equipment until July 2021, and that its equipment consultant found that most of the equipment was operational. The consultant opined that had the equipment been properly cleaned and stored, it could have been restored to its prior conditions. Instead, it was a total loss because it was put away dirty and wet, and/or stored in the open for several months.

Wesco also complains that in addition to Plaintiffs making exorbitant demands for advances prior to allowing an inspection, Plaintiffs undertook repairs and renovations that exceeded the scope reflected in both Wesco's estimates and its own estimates without notifying Wesco. Wesco asserts that at the very least Plaintiffs could have photographed the alleged damages to provide to Wesco.

Wesco argues that Plaintiffs' conduct prejudiced Wesco by failing to cooperate which is a material breach of the contract and a defense to suit. Wesco also argues that because Plaintiffs have no valid claim, their claim for penalties and attorney fees must fail.

In response, Plaintiffs assert that they have complied with the conditions of the insurance policy and have allowed Wesco four inspections of the insured property.[22] Plaintiff asserts that Wesco had numerous opportunities to test the contents, [23] and in addition, Plaintiffs followed standard mitigation procedures which including drying-out, tarping, and moving the contents to storage containers.[24] Plaintiffs remark that Wesco never mentioned that Plaintiffs' mitigation efforts were inadequate and note that Wesco made no request to re-inspect the personal property until January 2021, at which time the contents were ruined.[25]

Concerning the policy conditions as to repairs, Plaintiffs asserts that the policy does not require that notice be provided to Wesco before undertaking repairs or photographic evidence of the items needing repair/replacement. Plaintiffs inform the Court that it provided notice to Wesco by allowing Wesco three opportunities to inspect before repairs were made in addition to the estimates and reports Plaintiffs submitted which included numerous photos which showed the particular damages that were repaired and/or items replaced.[26]

---

[22] Plaintiffs' exhibits, A, F, and Z.
[23] Id.
[24] Plaintiffs' exhibit I.
[25] Plaintiffs' exhibit J.
[26] Plaintiffs exhibits C, X, Y, K, and M.

Wesco responds that the photographs provided by Plaintiffs fail to show any damage to the trusses, and there are no photographs of the kitchen equipment that was allegedly damaged. Wesco remarks that Plaintiffs do not dispute that they never provided any sort of notice or evidence of the necessity to completely replace and/or re-route the plumbing, but instead rely on the testimony of a plumber to support their contention that the work was necessary. Wesco argues that the plumber's invoices, without photos, is insufficient.

Wesco complains that the GLS estimate and Declaration of Gary Sander is not competent evidence that Plaintiffs provided notice to Wesco of damage to the electrical system requiring complete replacement. Wesco notes that the $11,000 estimate is not representative of complete replacement of the building's electrical system.

Wesco complains that Plaintiffs' contractor's expert report is not competent evidence that Plaintiffs provided notice to Wesco that the brick veneer was damaged and needed to be completely removed from the building. Wesco notes that the report was produced on August 10, 2021 as part of Plaintiffs' disclosures, but that at that point, the brick had already been removed from the building.

Wesco argues that Plaintiffs' failure to cooperate is a material breach of the contract and a defense to suit on the policy Consequently, due to Plaintiffs' failure to comply with the Policy Conditions before bringing suit, Wesco has been prejudiced. Wesco maintains that Plaintiffs' summary judgment evidence fails to raise issues of material fact that would preclude summary judgment.

The Court has reviewed the evidence submitted by both parties and finds that there is a genuine issue of material fact for trial.

## **CONCLUSION**

Because there are genuine issues of material fact for trial as to whether or not Plaintiffs failed to comply with the Policy Conditions, the Court will deny Wesco's motion for summary judgment.

**THUS DONE AND SIGNED** in Chambers on this 20th day of October, 2021.

_____
**JAMES D. CAIN, JR.**
**UNITED STATES DISTRICT JUDGE**